UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BULAT SAMBUEV, | No. 1:25-cv-01814-DJC-AC |
| Petitioner, | |
| v. | ORDER |
| TONYA ANDREWS, et al., | |
| Respondents. | |

Petitioner is a noncitizen who entered the United States in June of 2023. (Mot. (ECF No. 2) at 5.) Nearly two years later, Petitioner appeared for a hearing at Immigration Court and was detained by Immigration and Customs Enforcement officials, purportedly pursuant to 8 U.S.C. § 1225(b)(2). (Opp'n (ECF No. 6) at 2.) On December 11, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus along with a Motion for Temporary Restraining Order, arguing his present detention is unlawful and seeking a bond hearing. (ECF Nos. 1, 2.) For the reasons stated below, Petitioner's Motion is granted in part.

**BACKGROUND**

Petitioner is a noncitizen from Russia who entered the United States in June of 2023. (Mot. at 5.) Shortly thereafter, he was detained by Department of Homeland Security ("DHS") officials. (Opp'n at 2.) Petitioner was then released on his own

1

recognizance on July 2, 2023. (*Id.*; (Gallenkamp Decl. (ECF No. 6-1), Ex. 2 at 1.) Over the next two years, Petitioner complied with the reporting and supervision requirements of his release. (Mot. at 5.) On June 6, 2025, Petitioner appeared for a hearing at the San Francisco Immigration Court and United States Immigration and Customs Enforcement ("ICE") officers detained him, purportedly pursuant to 8 U.S.C. § 1225(b)(2). (*Id.* at 5; Opp'n at 2.)

In July of 2025, Petitioner requested a custody redetermination hearing. (Mot. at 6.) The government opposed the hearing, arguing Petitioner was detained pursuant to section 1225 and, therefore, subject to mandatory detention and ineligible for bond. (*Id.*) The Immigration Judge denied Petitioner's request for a bond hearing on these grounds. (*Id.*)

On October 22, 2025, the Immigration Court ordered Petitioner removed to Russia but granted Petitioner Convention Against Torture ("CAT") protection against removal to Russia, thus withholding removal. (Mot. at 6.) On November 4, 2025, DHS appealed this decision to the Board of Immigration Appeals ("BIA"). (Opp'n at 2.) Petitioner remains in custody at the Golden State Annex in McFarland, California.

Petitioner filed a Petition for a Writ of Habeas Corpus and a Motion for Temporary Restraining Order. (ECF Nos. 1, 2.) Briefing on the Motion for Temporary Restraining Order is now complete. (Mot. (ECF No. 2); Opp'n (ECF No. 6).) The Court ordered this matter submitted without oral argument. (*See* ECF No. 4.)

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious

questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). The Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of likelihood of success. *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

**DISCUSSION**

**I. Likelihood of Success on the Merits**

**A. Applicability of Section 1231**

As the government correctly identifies, "because DHS appealed [Petitioner's] order, it is not final, and § 1231 does not apply." (Opp'n at 4.) Section 1231(a) only authorizes detention in two circumstances: during and after the removal period. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008). The removal period "ordinarily lasts 90 days but does not begin until the *latest* of the following: (i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order"; "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* (emphasis omitted) (quoting § 1231(a)(1)(B)).

In this case, the removal period has not yet begun, meaning section 1231 does not apply. As the government has appealed Petitioner's order to the BIA it does not qualify as "administratively final." *See* 8 C.F.R. § 1003.39 (explaining that "[e]xcept when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first"). Therefore, as neither of the other two triggering events have occurred in Petitioner's case, the removal period has not yet begun, and section 1231

cannot justify Petitioner's detention.  *See Prieto*, 534 F.3d at 1059 (holding that when the removal period has not begun, "the [noncitizen] may not be detained under any subsection of § 1231(a) unless and until" the event triggering the removal period takes place).

### B. Detention under Sections 1225 and 1226

As section 1231 cannot apply to Petitioner's detention, section 1226 instead governs Petitioner's detention and rights therein.  The government argues that Petitioner's "detention is governed by § 1225(b)(2)," and, therefore, Petitioner is subject to mandatory detention and not entitled to a bond hearing.  (Opp'n at 3–5.)

Sections 1225 and 1226 both govern the detention and removal of noncitizens from the United States.  However, section 1225 provides for mandatory detention of certain individuals, while section 1226 establishes a discretionary detention scheme.  Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained."  8 U.S.C. § 1225(b)(2)(A).  In contrast, under section 1226's discretionary scheme, a noncitizen may be detained pending a decision on their removal.  8 U.S.C § 1226(a).  Section 1226(a) affords noncitizens a statutory right to a bond hearing before an immigration judge.  *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) (citing 8 C.F.R. § 1236.1(d)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022)  "At that hearing, the noncitizen may present evidence of their ties to the United States, lack of criminal history, and other factors that show they are not a flight risk or danger to the community."  *Bostock*, 779 F. Supp. 3d at 1256.

The government is incorrect that section 1225 applies to Petitioner.  The government argues that because Petitioner is an "applicant for admission," section 1225 applies and mandates Petitioner's ongoing detention.  (Opp'n at 4.)  However, this Court has previously joined numerous other courts within this Circuit in rejecting this broad reading of section 1225.  *See Lopez v. Lyons*, No. 2:25-cv-03174-DJC-CSD, 2025 WL 3124116 (E.D. Cal. Nov. 7, 2025); *Singh v. Andrews*, No. 1:25-cv-01543-DJC-SCR, 2025 WL 3248059 (E.D. Cal. Nov. 19, 2025); *Mariagua v. Chestnut*, No. 1:25-cv-

4

01744-DJC-CSK, 2025 WL 3551700 (E.D. Cal. Dec. 11, 2025); *Ortega v. Noem*, No. 1:25-cv-01663-DJC-CKD, 2025 WL 3511914 (E.D. Cal. Dec. 8, 2025); *Souza v. Robbins*, No. 1:25-cv-01597-DJC-JDP, 2025 WL 3263897 (E.D. Cal. Nov. 23, 2025). Instead, section 1225 applies solely to those arriving at the border while section 1226 applies to those already present within the United States. As this Court has previously explained, Respondents' argument that this term extends beyond the border to reach those who have been present within the United States for a meaningful period of time would contravene decades of agency practice and render significant swaths of this statute surplusage. *See Morillo v. Albarran*, No. 1:25-CV-01533-DJC-AC, 2025 WL 3190899, at *3–4 (E.D. Cal. Nov. 15, 2025).

Here, it is uncontested that Petitioner was initially detained in June of 2023 and was released on his own recognizance in July. (Opp'n at 2.) It is also uncontested that Petitioner was taken into ICE custody on June 6, 2025, approximately two years after he entered the country. (*Id.*) Petitioner's Order of Release on Recognizance explicitly states that Petitioner was released pursuant to section 1226. (Gallenkamp Decl., Ex. 2 at 1.) Thus section 1225(b)(2) flatly does not apply to Petitioner. Therefore, Petitioner is likely to succeed on the merits of his claim that he has been unlawfully detained.

The Court's determination that section 1226 applies to Petitioner also comports with Ninth Circuit precedent. In the *Prieto-Romero v. Clark*, the Ninth Circuit first held that section 1231 could not govern the detention of a noncitizen whose removal period had not been triggered by a qualifying event. 534 F.3d 1053, 1059 (9th Cir. 2008). The Ninth Circuit then concluded this individual's detention was governed by section 1226, the statute under which he had initially been detained. *Id.* at 1058, 1062. Therefore, as Petitioner's section 1231 removal period has not yet begun and Petitioner was initially detained pursuant to section 1226, that section continues to apply to Petitioner and sets forth the rights and procedures accompanying his detention.

## II. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of a temporary restraining order. For months, Petitioner has been "held in overcrowded and unsanitary housing units" and his requests for "medical care are frequently ignored or subject to lengthy delays." (Mot. at 6.) The Ninth Circuit has recognized the irreparable harm inflicted by such "subpar medical and psychiatric care in ICE detention facilities." *Hernandez*, 872 F.3d at 995. Further, Petitioner states that he has been repeatedly subjected "to degrading and humiliating verbal abuse, including slurs and derogatory remarks directed at him on the basis of his race and national origin" and to "unnecessary, non-consensual physical contact." (Mot. at 7.)

More broadly, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018). The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995. In the years prior to his most recent detention, Petitioner supported his wife and stepson. (Mot. at 5.) Petitioner has thus established irreparable harm.

## III. Balance of the Equities & the Public Interest

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "[I]n addition to the potential hardships facing [Petitioner] in the absence of an injunction," the court may consider "the indirect hardship to their friends and family members." *Hernandez*, 872 F.3d at 996 (quoting *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).

Here, the balance of equities and the public interest weigh in favor of Petitioner. Petitioner's wife and stepson are harmed by his ongoing detention. A temporary restraining order also inflicts minimal harm to the government. Though

Respondents have an interest in enforcing immigration laws, they have no interest in erroneously enforcing the wrong law, as they have done here.  This Order instead furthers that interest through application of the correct law.  Finally, this relief benefits the public.  "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue."  *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022).  Moreover, the "public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025).  For these reasons, the Court concludes that the balance of equities and the public interest weigh in favor of Petitioner.

**IV. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Because the "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.[1]

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is

---

[1] The Court does not address Respondents' request that the Court dismiss all respondents except Tonya Andrews.  (*See* Opp'n at 2 n.1.)  If Respondents wish to dismiss these individuals, they must file a properly noticed motion to dismiss.

1. GRANTED IN PART and DENIED IN PART;
2. Within seven (7) days of this Order, Petitioner shall be afforded a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a) before an Immigration Judge. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or risk of flight, and Petitioner shall be allowed to have counsel present. Respondents shall file a status report within nine (9) days of the date of this Order, confirming whether a bond hearing was held and, if so, the outcome of that hearing;
3. Petitioner's remaining requests are DENIED without prejudice to renewed argument on the motion for preliminary injunction;
4. Respondents are ORDERED TO SHOW CAUSE on or before December 26, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order. On or before December 31, 2025, Petitioner may file a reply, if any, to Respondents' opposition;
5. Petitioner may file on or before December 26, 2025, a further brief in support of those portions of the requested injunctive relief that are denied in this Order. Respondents may file a reply to any such further brief on or before December 31, 2025; and
6. Pursuant to Local Rule 230(g), the Motion for Preliminary Injunction is submitted on the papers. If the Court subsequently concludes that oral argument is necessary, a hearing will be set and the parties notified accordingly.

IT IS SO ORDERED.

Dated: __**December 20, 2025**__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE